L. A. YOUNG, Appellant, v. THE MARION-SIMS COL-
LEGE OF MEDICINE et al., Respondents.

**St. Louis Court of Appeals, December 17, 1901.**

1. **Equity**: REFORMATION OF CERTIFICATE OF INDEBTED-
NESS: EVIDENCE. In the case at bar, there is no sufficient evi-
dence in the record to warrant a reformation of the certificate of
indebtedness held by the appellant.

2. ———: ———: ———: KNOWLEDGE OF CONTENTS OF CER-
TIFICATE OF INDEBTEDNESS. And appellant must have known
its contents when he received it and took it without objection to its
form or its contents, at least, he is presumed to have known what the
certificate contained and he admits that he made no objection to
its conditions.

3. ———: ———: ACTION. And the appellant is not, in this action,
entitled to affirmative relief on the certificate as insisted.

Appeal from St. Louis City Circuit Court.—*Hon. Selden P.
Spencer*, Judge.

AFFIRMED.

*J. F. & R. H. Merryman* for appellant.

Judgment should have been rendered against the Marion-
Sims Dental College.    In Hibernia Ins. Co. v. St. L. & New
Orleans Transp. Co., 13 Fed. Rep., page 516, McCrary, Judge,
held: "That the sale by a corporation of all its property to
another corporation, composed mostly, if not wholly, of the
same persons, was fraudulent and void as to all creditors of
the former company not assenting thereto. . . . . Equity
can not permit the owners of one corporation to organize an-
other and transfer from the former to the latter all the cor-

porate property without paying all the corporate debts."

*Lubke & Muench* for respondents:

(1)  There is an absence of all proof relative to every charge in the petition, except possibly as to mistake in the execution of the instrument set out in the pleading.  All the charges of fraud and misconduct in management are therefore eliminated from the case.  (2) Reformation of the instrument sued on is consequently the only issue left in this cause, and as to that, there is a total failure of such proof as would justify a court of equity in directing any reformation. To justify a reformation, there must be evidence of a mutual mistake so clear, cogent, positive and convincing as to entirely satisfy the mind of the chancellor, and leave no reasonable ground for hesitation.  It must be equivalent to an admission.   Fanning v. Doan, 139 Mo. 392; Judson v. Mullinax, 145 Mo. 630; Parker v. Van Hoozer, 142 Mo. 621, 627; Turner v. Shaw, 96 Mo. loc. cit. 26; Story's Eq. Jur. (13 Ed.), sec. 156; Pomeroy's Eq. Jur., sec. 839; Kerr on Fraud & Miss., pp. 497, 506; 20 Am. and Eng. Ency. of Law, pp. 714, 715.

BLAND, P. J.—The suit is a bill in equity to reform the following instrument:

"No. 21.  This is to certify that Dr. L. A. Young has this day advanced to the Marion-Sims College of Medicine the sum of one thousand and sixty dollars to be used by said college for purchasing a suitable site and equipping a college building for said Marion-Sims College of Medicine.  In consideration of said advances the said college hereby agrees and promises to refund said sum of one thousand and sixty dollars to said Dr. L. A. Young, his legal representatives or assigns together with interest thereon at the rate of six per cent per annum from date hereof, whenever the faculty of said col-

lege shall decide that the financial condition of said college will permit such reimbursement, or shall desire to make reimbursement. And it is further understood, that if said college shall cease to maintain a faculty and an active school of instruction under its constitution and charter, this obligation shall be at once due and payable at the election of the holder of this certificate.

"In witness whereof, said Marion-Sims College of Medicine has by the dean and secretary, and with its corporate seal hereto affixed, executed and delivered this instrument at the city of St. Louis, State of Missouri, this twenty-seventh day of October, A. D. 1894.

(Signed)                    "Y. H. BOND, Dean,
(Corporate Seal.)          "HANAU W. LOEB, Sec'y."

on the ground that it does not express the contract as agreed to between the appellant and respondent (The Marion-Sims College of Medicine), and that fraud or mistake was committed in the making of it. The bill alleges that the contract made between the parties was as follows:

"No. 21. This is to certify that Dr. L. A. Young has this day advanced to the Marion-Sims College of Medicine the sum of one thousand and sixty dollars to be used by said college for purchasing a suitable site and erecting and equipping a college building for the dental department of the Marion-Sims College of Medicine. In consideration of said advances the said college hereby agrees and promises to refund said sum of one thousand and sixty dollars to said Dr. L. A. Young his legal representatives and assigns, together with interest at the rate of six per cent per annum from date hereof, whenever the faculty of said college shall decide that the financial condition of said college will permit such reimbursement, or said Dr. L. A. Young shall cease to be a member of said faculty. And it is further understood that if said dental department of the said Marion-Sims College of Medicine shall

ccase to maintain a faculty and an active school of instruction under its constitution and charter, this obligation shall at once be due and payable at the election of the holder of this certificate. In witness whereof said Marion-Sims College of Medicine has by the dean and secretary, and with its corporate seal hereto affixed, executed and delivered this instrument at the city of St. Louis, State of Missouri, this twenty-seventh day of October, A. D. 1894.

    (Signed)              "Y. H. BOND, Dean,
    (Corporate Seal.)      "HANAU W. LOEB, Sec'y."

and prays that the instrument be reformed so as to express the intention of the parties and asks for a judgment on the instrument as reformed, and for general relief.

The answer is a general denial. The respondent, The Marion-Sims College of Medicine, was incorporated in 1890 under the statutes concerning eleemosynary institutions without any capital stock. It was agreed by the incorporators that each member of the faculty of the institution should advance one thousand dollars towards a common fund to be paid when the faculty should deem that the financial condition of the college would permit, or when the college should cease to maintain a faculty. In 1893 a scheme for the organization of a dental department of the college was formulated and the appellant was by resolution of the board of directors commissioned to execute the scheme. He made an effort to organize the dental department but failed, and reported his failure to the board of directors. On the eleventh of October, 1900, the faculty of the medical college and board of directors subscribed twenty thousand dollars to the capital stock and incorporated the Marion-Sims College of Medicine and on December 1, 1900, the medical college, for the consideration of seventeen thousand dollars, conveyed certain real estate in the city of St. Louis to the dental college. On July 25, 1900, the dental college was sold for seventeen thousand six hundred

and thirty-five dollars to a corporation composed of individuals who constituted the faculty of the medical college and a part or all the faculty of the dental college.    The board of directors of the dental college was composed principally of members of the board of directors or faculty of the medical college and it seems that the faculties of both schools met and acted as one body and that the dental college was treated as a department of the medical college and that both schools were practically under one management.    The dean of the medical college was made ex officio president of the dental college on July 3, 1893.    At the same time appellant was appointed professor of prothetic dentistry and metallurgy, and continued to serve until May, 1895, when he resigned.

On October 6, 1895, he addressed a letter to the dean of the medical college in which he requested that the college would settle his note as early as possible.    To this letter, the dean (Dr. Bond) replied that he had presented the request to the faculty at its last meeting and that it was decided to comply with the request as soon as possible.    Appellant testified that he paid five hundred of the one thousand dollars about the time he was appointed a member of the faculty and the balance in different installments as it was needed, and that on October 23, 1894, the date of the issuance of the certificates of indebtedness, the interest on all he had paid amounted to sixty dollars and was incorporated in the certificate as part of the principal.    He testified that the certificate was not handed to him on the day of its date, but some time thereafter; that the particular date he was unable to give; that when it was handed to him he objected to it and wanted it made payable to his wife; that he was told he could assign it to her; that he did not know whether he read it all over at that time or not, but that probably he did.    The only objection he made at the time was that it was not made payable to his wife, and that he had at no time thereafter made any objection to the certificate but demanded payment of the one held.    He testified that he

had been told by Dr. Bond, the dean of the faculty, before he had made any payment or been appointed to the professorship by the faculty, that if he paid one thousand dollars it would be paid back to him when he ceased to be a member of the faculty, and that he paid the money with that understanding. He testified that during the scholastic year of 1893-4, he labored to interest others with him in the organization of the dental department, and in the second year of his appointment, to-wit, 1894 and 1895, he acted as dean of the dental department and lectured on operative dentistry, crown and bridge work; that he was a dentist, not a physician or professor of medicine.

There is no sufficient evidence in the record to warrant a reformation of the certificate of indebtedness held by the appellant. He must have known its contents when he received it and took it without objection to its form or its contents; at least, he is presumed to have known what the certificate contained and he admits that he made no objection to its conditions.

It is contended by appellant that defendant, The Marion-Sims College of Medicine, has acted fraudulently in the disposition of its assets, in that it has disposed of the dental department of the college, and has absorbed the Beaumont College of Medicine, and for these reasons appellant is entitled to recover on the certificate as issued under his prayer for general relief. He further contends that the certificate is due for the reason that The Marion-Sims College of Medicine has ceased to exist and to maintain a faculty.

The record discloses the fact that on July 25, 1900, the Marion-Sims College sold its dental department for seventeen thousand six hundred and thirty-five dollars to persons, who thereafter incorporated the Marion-Sims Dental College with a capital stock of twenty thousand dollars paid in full. The evidence does not disclose what disposition, if any, has been made of the seventeen thousand six hundred and thirty-five

dollars received for the sale of the dental department. For aught that appears in the evidence this money is still in the treasury of the defendant, The Marion-Sims College of Medicine. There is no evidence that the sale of the dental department of the college was for less than the actual value of its assets or that the transaction is tainted with the suspicion of fraud.

The petition to reincorporate the Marion-Sims Medical College was not to raise a new corporation, but shows on its face it was merely to change the name of the corporation from The Marion-Sims Medical College to the Marion-Sims Beaumont Medical College. The new corporation did not destroy the old corporation. Its purpose was to take in another college and add to its corpus and to broaden its field of labor. It yet maintains its faculty and is the same college, though under another name and its identity is no more effected by the change in name than would be the identity of the maiden Jane Smith, who should change her name by marrying the man John Jones.

On what consideration, if any, the Beaumont College of Medicine was acquired by the Marion-Sims College is not disclosed by the evidence. The certificate of the indebtedness issued to appellant provides that, "Whenever the faculty of said college shall decide that the financial condition of said college will permit said reimbursement, or shall desire to make reimbursement, and it is further understood that if said college shall cease to maintain a faculty and an active school of instruction under its constitution and charter, this obligation shall be at once due and payable at the relation of the holder of this certificate." The certificate would become absolutely due should The Marion-Sims College of Medicine cease to maintain a faculty, but so long as it maintains a faculty and an active school of instruction under its constitution and charter, the payment of the certificate rests in the judgment of the faculty as to the ability of the college at any time to pay the certificate without embarrassment to its financial condition.

This judgment, however, is not to be arbitrarily exercised, but should be exercised in good faith and with a due regard to the rights of the appellant to be reimbursed for the moneys he loaned the college. But the appellant is not, in this action, entitled to affirmative relief on the certificate as issued and the judgment is affirmed. Crawford v. Aultman & Co., 139 Mo. 262. *Barclay, J.,* and *Goode, J.,* concur.